# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| OLYMPIA NEELY, formerly known as OLYMPIA MAYFIELD, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:15CV983 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Olympia Neely ("Plaintiff") brought this action pursuant to Section 205(g) of

the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain review

of a final decision of the Commissioner of Social Security ("Commissioner") denying her

claims for Disability Insurance Benefits ("DIB") and a Period of Disability ("POD") under

Title II of the Act. Presently before this Court are Plaintiff's Motion for Judgment and

accompanying brief (Docket Entries 10-11), and the Commissioner's Motion for Judgment

on the Pleadings and accompanying memorandum (Docket Entries 12-13). This Court also

has before it the certified administrative record,[1] and this matter is now ripe for adjudication.

After a careful consideration of the evidence of record, the Decision of the Administrative

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 8.)

Law Judge ("ALJ"), and the governing legal standard, this Court concludes that the Decision of the ALJ should be affirmed.

## I. BACKGROUND

Plaintiff filed applications for DIB and a POD in August of 2012, alleging a disability onset date of May 19, 2012. (Tr. at 130-133, 144.) The applications were denied initially and again upon reconsideration. (*Id.* at 68-71, 73-75.) Plaintiff then requested a hearing before an ALJ. (*Id.* at 81.) At the August 5, 2014 hearing, were Plaintiff, her counsel, and a vocational expert ("VE"). (*Id.* at 24-48.) After the hearing, the ALJ determined that Plaintiff was not disabled under the Act.[2] (*Id.* at 14-23.)

Specifically, the ALJ concluded (1) that Plaintiff met the insured status requirement through December 31, 2016, (2) that Plaintiff had not engaged in "substantial gainful activity" from May 19, 2012, and (3) that Plaintiff's comminuted distal radial fracture of the left wrist, hypertension, and obesity were severe impairments. (*Id.* at 16.) However, the ALJ concluded that the disorders did not meet or equal a listed impairment. (*Id.* at 17-19.)

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

The ALJ then determined that Plaintiff had the Residual Functional Capacity ("RFC")[3] to perform medium work, so long as she was limited to (1) only frequent, but not constant, use of the left hand for gross and fine manipulation, (2) following short, simple instructions and routine tasks, and (3) avoiding ladders, ropes, scaffolds, unprotected heights, and machines with dangerous parts. (*Id.* at 19.) The ALJ concluded further that Plaintiff's RFC included the ability to sustain attention and concentration for two hours at a time. (*Id.*)

The ALJ then concluded that Plaintiff was able to perform her past relevant work as a hospital cleaner and laundry worker. (*Id.* at 22-23.) Accordingly, the ALJ entered a Decision that Plaintiff was not disabled and denied her benefits. (*Id.* at 23.)

Plaintiff requested that the Appeals Council review the ALJ's Decision and on September 21, 2015 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-4.) Plaintiff then initiated this action.

## II.    LEGAL STANDARD

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. § 405(g); *Hines*, 453 F.3d at 561. However, the scope of review of such a decision is "extremely limited." *Fray v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "The

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006) (citation omitted). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." *Hines*, 453 F.3d at 562-63.

courts are not to try the case de novo." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock*, 667 F.3d at 472 (internal quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Patel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." *Hunter*, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." *Mastro*, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock*, 667 F.3d at 472.

## III.    PLAINTIFF'S ASSERTIONS OF ERROR

Plaintiff asks this Court to reverse the Decision of the Commissioner, and in support of her request, she makes several arguments. First, Plaintiff contends that the ALJ erred in evaluating and weighing the medical opinion of Plaintiff's primary care provider and that the ALJ further erred in the weight she assigned to a non-examining state agency physician.

4

(Docket Entry 11 at 4-13.)   Second, Plaintiff contends that the ALJ erred in her credibility analysis.   (*Id.* at 13-15.)   For the following reasons, these objections lack merit.

## IV. ANALYSIS

### A.  *The ALJ Properly Evaluated the Medical Opinions of Record.*

Plaintiff first contends that the ALJ failed to properly consider and weigh the medical opinions of a treating physician, Dr. Christine Shugart, M.D., and a non-examining state agency physician, Dr. Evelyn Jimenez-Medina, M.D.   (Docket Entry 11 at 4-13.)   The treating source rule requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment.   20 C.F.R. § 404.1527(c)(2).   The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference.   The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion.   *See id.* § 404.1527(c)(2)(ii).   Moreover, as subsections (2) through (4) of the rule describe in detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record.   *See id.* § 404.1527(c)(2)-(4).   "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."   *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

### i.     *Dr. Shugart*

The ALJ specifically considered Dr. Shugart's opinion in her Decision and gave it "little weight."   (Tr. 22.)   In support, the ALJ discussed Dr. Shugart's opinion at considerable

length, stating the following:

In June 2014, the claimant followed up at Novant Health with [Dr. Shugart] regarding her previous diagnoses of hypertension and hyperlipidemia. The claimant was taking her blood pressure medications but was noncompliant with her cholesterol medicine due to financial constraints. Additionally, the claimant presented with disability forms to be filled out, stating that her left arm fracture healed with significant deformity due to malunion and that she now had pain, limited movement, and decreased strength in the left arm. The claimant said she had tried extensively to find other work but no one would hire her due to her arm limitations. She denied depression but said her mood was down at times related to her inability to find work. The claimant had not followed up with the eye doctor regarding her glaucoma due to lack of insurance. The claimant endorsed frequent headaches, dizziness, sweating spells, fatigue, depression, chest pain, and shortness of breath. On physical examination, a visible deformity of the wrist was noted. There was pain to palpation over the area of deformity with significantly limited range of motion of the wrist. There was also decreased grip strength and decreased wrist strength. Amitriptyline was added to help with sleep and she was prescribed a less expensive cholesterol medication. Dr. Shugart noted that the disability forms were completed and that the claimant's arm had posed a significant disability preventing her from gaining employment (Exhibits 7F and 8F). The determination of whether an individual is disabled or unable to work is clearly reserved to the Commissioner pursuant to 20 CFR 416.927. Statements that a claimant is disabled are not given any special significance on the issue of disability.

Notably, when requesting that Dr. Shugart complete the medical source statement in June 2014, the claimant endorsed multiple symptoms on a review of symptoms, which were not reported prior to June 2014 and have not been reported since then. Overall, the claimant's allegations of such significant functional limitations of the left wrist are inconsistent with the lack of objective findings related to her wrist since May 2012, other than at the June 2014 visit. Further, there were no complaints of wrist pain and limitations to treating physicians

from August 2013 through June 2014, a period of almost 2 years. I acknowledge that the claimant had financial difficulties interfering with her ability to receive consistent follow up treatment. However, if the claimant's wrist pain was of disabling severity as alleged, one would expect to see some sort of treatment during a two year period.

In June 2014, [Dr. Shugart], the claimant's treating physician, completed a medical source statement, indicating that the claimant was able to lift and carry less than 10 pounds. The claimant had no limits on her ability to stand, walk, and sit. Dr. Shugart noted that the claimant had a visible deformity of the left wrist/forearm/hand, with limited wrist range of motion for flexion, extension, supination, and pronation. There was decreased strength of the hand and wrist on examination. The claimant should never climb ladders because she was unable to properly grasp the ladder with her left hand. Dr. Shugart stated that the claimant had decreased range of motion and strength of her left hand and wrist, limiting her ability to reach, finger, push, pull, handle, and feel with her left hand. Additionally, the claimant had decreased vision secondary to glaucoma. Dr. Shugart indicated that the claimant had described limitations since 2011 (Exhibit 5f). I note that the medical evidence of record reflects that the claimant first saw Dr. Shugart in October 2013. The claimant followed up with the nurse practitioner in February 2014 and then returned to Dr. Shugart in June 2014 and August 2014 (Exhibits 4F, 7F, and 8F). Although Dr. Shugart is the claimant's treating physician, I have accorded this opinion little weight as it is not supported by the longitudinal evidence of record. Dr. Shugart's treatment notes document no objective findings of wrist abnormalities at any visit other than in June 2014, when claimant was requesting completion of disability paperwork. In October 2013, when the claimant established treatment with Dr. Shugart and reported wrist problems, there were no clinical findings and no diagnosis associated with the claimant's status post wrist fracture.

In August 2014, the claimant followed up with Dr. Shugart after a recent motor vehicle accident. The claimant had a chest wall contusion and overall soreness, which was gradually improving. She weighed 234 pounds, had marked resolving

> ecchymosis over the right anterior breast, and had moderate
> tenderness in this area, but physical examination was otherwise
> unremarkable. (Exhibit 7f).

(*Id.* at 21-22.)

The ALJ determined that Dr. Shugart's opinion dated June 2014 was entitled to limited weight for a number of reasons. First, while the ALJ correctly recognized that Dr. Shugart was one of Plaintiff's treating physicians (*id.* at 21-22, 286-87), the ALJ also recognized that Plaintiff began treating with Dr. Shugart in October 2013, more than a year after she injured her wrist in May 2012 (*id.* at 21-22, 229-33), and that Dr. Shugart saw Plaintiff on only three occasions – October 2013, June 2014, and August 2014 (*id.* at 22, 278-81, 301-04, 311-322, 286-87, 290-95). The ALJ correctly noted that Dr. Shugart's opinion did not provide the longitudinal evidence anticipated by regulation. (*Id.* at 22.) *See* 20 C.F.R. § 404.1527(c)(2)(i).

Second, the ALJ correctly evaluated Dr. Shugart's June 2014 opinion and reasonably determined that her opinion was neither consistent with, nor supported by, her own treatment notes and examination findings. (Tr. 21-22.) For example, the ALJ noted, that during Plaintiff's initial appointment with Dr. Shugart in October 2013, Plaintiff reported that she had been told that her wrist "healed crooked" (a description that is not found in the record medical evidence) and that she "can't lift or use the wrist like she used to." (*Id.* at 21-22, 278.) Dr. Shugart found that Plaintiff was in no distress, and that her extremities were normal, atraumatic, and without cyanosis or edema. (*Id.* at 279.)

Dr. Shugart did not assess Plaintiff with any wrist condition or impairment and did not recommend any treatment for her wrist. (*Id.* at 279.) *See, e.g., Lane v. Comm'r of Soc. Sec.*, 100

F. App'x 90, 95-6 (3d Cir. 2004) (holding that an ALJ "is entitled to rely not only on what the record says, but also on what it does not say") (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)); *Edwards v. Colvin*, 1:13CV43, 2015 WL 9216792, at *5 (M.D.N.C. Dec. 16, 2015) (unpublished) (citing *Dumas*, 712 F.2d at 1553). Subsequently, in February 2014, Plaintiff followed up with a nurse practitioner in Dr. Shugart's office. (Tr. 21, 274.) At that time, Plaintiff did not mention any issues or complaints with her wrist, and on examination, her extremities were normal, atraumatic, and without cyanosis or edema. (*Id.* at 21-22, 275.)

Plaintiff returned to Dr. Shugart in June 2014, more than two years after her May 2012 wrist injury, and advised Dr. Shugart that she was applying for disability "related to a left arm fracture which occurred 3 years ago" and that she had disability forms that needed to be completed. (*Id.* at 21-22, 292-93.) Plaintiff also advised Dr. Shugart, that she had "tried extensively to find other work, but no where [sic] will hire her due to the disability with the arm." (*Id.* at 21, 293.) Although Dr. Shugart had never assessed Plaintiff with any wrist injury, treatment notes from this examination indicate that Plaintiff had a visible deformity in her left wrist; pain to palpation over the area of deformity; limited wrist range of motion; and slightly decreased grip strength (4/5). (*Id.* at 22, 294.)

At that time, Dr. Shugart completed a medical source statement and stated, in pertinent part, that while Plaintiff had no limitations in her ability to stand, walk, or sit during an eight-hour day, she could lift and carry less than 10 pounds, would be unable to climb a ladder because of the inability to grasp with her left hand, and had limited use of her left hand due to decreased range of motion and strength in her left hand and wrist. (*Id.* at 22, 287.) Dr.

Shugart also noted that Plaintiff's symptoms and limitations began in 2011, although Plaintiff did not, in fact, injure her wrist until 2012. (*Id.* at 22, 286-87, 229.)

In August 2014, Plaintiff returned to Dr. Shugart following a car accident. (*Id.* at 22, 290.) Plaintiff did not complain about her left wrist or hand, and her extremities were normal, atraumatic, and without cyanosis or edema. (*Id.* at 290-91.) Because Dr. Shugart's June 2014 opinion was inconsistent with her own treatment notes and findings before and after, the ALJ properly found that the opinion was entitled to little weight. (*Id.* at 22.) The ALJ did not err in determining that Dr. Shugart's June 2014 opinion was inconsistent with the majority of her treatment records and, accordingly, in affording it little weight.

Third, the ALJ correctly evaluated Dr. Shugart's opinion in the context of the medical evidence. (*Id.* at 19-22.) For example, Plaintiff received emergency treatment for a left arm injury in May 2012 and x-rays revealed a comminuted mildly impacted intrarticular fracture of the left distal radius with very slight dorsal tilt and a nondisplaced fracture to the tip of the ulnar styloid process, but no other abnormalities. (*Id.* at 20, 233.) During a follow-up examination on May 29, 2012, x-rays revealed a fracture of the distal radius extending to the radiocarpal articular surface and a 4 mm displacement of distal fragment. (*Id.* at 20, 227.) At that time, William Mason, M.D., a treating physician, indicated that Plaintiff would be unable to return to work until re-evaluation and would be in a cast for six to eight weeks. (*Id.* at 20, 225.)

In June 2012, Plaintiff returned for a follow-up examination with Dr. Mason and reported that her pain was better, and only rated it as a two or three on a 10 point scale. (*Id.*

at 218.)    X-rays revealed that the fracture and alignment were unchanged from prior examinations.    (*Id.* at 20, 221.)    Plaintiff returned to Dr. Mason on July 3, 2012.    (*Id.* at 213-14.)    X-rays revealed a comminuted distal radial fracture with extension to the joint space, but alignment was the same as prior exams, and no acute fractures were identified.    (*Id.* at 20, 215.)    Dr. Mason diagnosed a left Colles fracture.[4]    (*Id.* at 214.)    In August 2012, Plaintiff was examined by her primary care physician and reported that she had been out of her cast for four to six weeks and had been unable to return to work since the accident.    (*Id.* at 20, 257.)    The provider noted that Plaintiff reported pain post fracture, and advised that physical therapy "may be necessary."    (*Id.* at 20, 258.)    Plaintiff received no further treatment for her wrist.

The ALJ accordingly found that Dr. Shugart's opinion was not supported by the record.    Though Plaintiff's wrist fracture prevented her from working for a number of weeks, and there was some visual deformity, she received no treatment for her injury since her cast was removed in July 2012.    (*Id.* at 20-22.)    Plaintiff was assessed with no functional limitations except for June 2014 when she requested that Dr. Shugart complete her disability paperwork.    (*Id.* at 20-22.)    Thus, the ALJ reasonably found that Dr. Shugart's treatment records were not supported by the record evidence as a whole.

Fourth, the ALJ was further correct in noting that the ultimate issue of whether Plaintiff

---

[4] *See Bredhenner v. Malloy*, 30 F. Supp. 3d 277, 280 (D. Del. 2014) ("A Colles fracture is a bone fracture of the radius of the wrist in which the lower fragment becomes displaced dorsally.") (citing The American Heritage Stedman's Medical Dictionary 169 (2d ed. 2004)).

is disabled is administrative and therefore reserved for the Commissioner, not Dr. Shugart. 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").[5] For these reasons, the ALJ's assessment of Dr. Shugart's opinions are legally correct and supported by substantial evidence.

### ii. *Dr. Jimenez-Medina*

Plaintiff next contends that the ALJ erred by affording "great weight" to the opinion of a non-examining state agency physician, Dr. Jimenez-Medina, that Plaintiff could perform medium work except that she could not do constant handling or fingering with the left arm and had to avoid concentrated exposure to hazards. (Docket Entry 11 at 10-13 *referencing* Tr. 20, 62, 64.) Dr. Jimenez also opined that Plaintiff does "have some pain & reduced [range of motion] but there is no indication that [Plaintiff's] wrist will not continue to heal over the duration of 12 months." (Tr. 63.) Plaintiff's primary objection is that Dr. Jiminez-Media's opinion was rendered prior to Petitioner being seen by Dr. Shugart and therefore Dr. Jiminez-Medina did not have the benefit of Dr. Shugart's opinion before rendering her own. (*Id.*)

This argument is not persuasive. ALJ reliance on non-examining state agency physicians' RFC assessments does not constitute error so long as such opinions find support

---

[5] Dr. Shugart provided a similarly conclusory and unsupported opinion on September 1, 2015, which was provided to the Appeals Council. (Tr. 8.) It contains the same infirmities as Dr. Shugart's June 2014 opinion, discussed in detail above.

in the entire record.[6]   Here, Dr. Jimenez-Medina's opinion is consistent with the absence of

findings regarding Plaintiff's wrist, and the absence of functional limitations arising from her

injury, as well as the lack of treatment suggested to Plaintiff.   Dr. Jimenez-Medina's opinion

is substantial evidence contradicting Dr. Shugart's opinion. *See* 20 C.F.R. § 1527(e)(2)(i) (ALJ

is entitled to rely upon and must consider as opinion evidence professional assessments from

state agency physicians because they are highly qualified experts in disability evaluation);

*Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ( "[T]he [opinion] of a non-examining

physician can be relied upon when it is consistent with the record.").

The record here lacks evidence or explanation to substantiate Plaintiff's allegedly

worsening wrist condition between the time Dr. Jimenez-Medina rendered her opinion and

when Dr. Shugart rendered hers.   And, in fact, one month after her injury, Plaintiff reported

that her pain was better and she rated it at a two or three on a 10-point scale.  (Tr. 60-61,

218.)   In August 2012, Plaintiff alleged wrist pain and decreased range of motion, but there

were no objective findings by her treatment provider nor functional limitations assessed, and,

as discussed above, x-rays were largely unchanged.   (*Id.* at 20, 61, 257.)

Further, in October 2013, despite reporting to Dr. Shugart that she had previously

injured her wrist and could not use her wrist like she used to, Dr. Shugart did not assess

---

[6] *See, e.g., Turner v. Colvin,* No. 1:13CV00761, 2015 WL 502082, at *7 (M.D.N.C. Feb. 5, 2015)
(unpublished), *report and recommendation adopted,* No. 1:13CV761, 2015 WL 12564210 (M.D.N.C. Mar.
6, 2015) (unpublished); *Thacker v. Astrue*, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011)
(unpublished); *Bryant v. Astrue*, No. 3:08CV719, 2009 WL 6093969, at *9 & n. 11 (E.D.Va. Jul. 15,
2009) (unpublished); *Bracey v. Astrue*, No. 5:07–CV–265–FL, 2009 WL 86572, at *3 (E.D.N.C. Jan. 6,
2009) (unpublished).

Plaintiff with any wrist injury, an objective examination of her extremities was normal, and no treatment was recommended. (Tr. 21, 279.) Notably, as explained earlier, the only occasion when Dr. Shugart made any objective findings regarding Plaintiff's wrist was in June 2014, when Plaintiff asked her to complete her paperwork for her disability application. Thus, in the absence of any intervening explanation for her allegedly declining condition, the ALJ was entitled to rely on Dr. Jimenez's opinion in assessing Plaintiff's RFC.

Finally, Plaintiff cannot rely on *Radford v. Colvin*, 734 F.3d 288, 295-96 (4th Cir. 2013). (*See* Docket Entry 11 at 12.) In *Radford*, the Fourth Circuit was concerned, in pertinent part, with the ALJ's failure to articulate his reasons for rejecting the treating physician opinions in favor of the state agency opinions. *Id.* ("the ALJ appeared to totally – and without explanation – reject the opinions of Radford's treating physicians in favor of the state medical examiner . . . . the ALJ's failure to adequately explain his reasoning precludes this Court from undertaking a 'meaningful review'"). Unlike *Radford*, however, the ALJ here provided numerous reasons (discussed above) for discounting Dr. Shugart's 2014 opinion and for crediting the opinion of Dr. Jimenez-Medina.[7]

---

[7] Plaintiff accurately points out that the ALJ could have ordered Plaintiff to undergo a consultative examination. (Docket Entry 11 at 13.) An ALJ has discretion in deciding whether to order a consultative examination. *See* 20 C.F.R. § 404.1519a; *Bishop v. Barnhart*, 78 Fed. App'x 265, 268 (4th Cir. 2003). The ALJ may order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim." 20 C.F.R. §§ 404.1519a(b). However, Plaintiff does not actually argue that the ALJ erred here for failing to order such a consultation. And even if she had, the argument would fail. Nothing on the record meaningfully suggests the ALJ erred in this regard.

### B. *The ALJ's Credibility Analysis Is Supported by Substantial Evidence.*

Plaintiff's second argument is that that the ALJ erred in her credibility assessment by failing to properly account for Plaintiff's lack of health insurance and by further failing to account for Plaintiff's prior work history. (Docket Entry 11 at 13-15.) For the following reasons, the Court agrees with the Commissioner that this argument also lacks merit.

*Craig v. Chater* provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 20 C.F.R. § 404.1529(b)).

If the ALJ determines that such an impairment exists, the second part of the test then requires her to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-96. While the ALJ must consider a claimant's statements and other subjective evidence at step two, she need not credit them insofar as they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors[8] and heard the claimant's testimony and

---

[8] The relevant regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (vi) any measures the claimant uses or has used to relieve her pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

observed her demeanor, the ALJ's credibility determination is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Nevertheless, "[a] claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984)).

Moreover, Social Security Ruling 96-7p, provides that:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment . . . . For example:
>
> . . . .
>
> The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

SSR 96-7p, 1996 WL 374186, at *7-8.[9]   However, even if a claimant cannot afford medical

_____

The regulations do not mandate that the ALJ discuss all these factors in a decision. *See, e.g.*, *Baggett v. Astrue*, No. 5:08–CV–165–D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (unpublished) (noting that the law requires "that the ALJ consider these factors, not that [s]he discuss each of them").

[9]   Effective March 28, 2016, *see* 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96-7p with Social Security Ruling 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." *Id.*   The ruling "clarify[ies] that subjective symptom evaluation is not an examination of the individual's character" *id.*, and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p" *id.* at *1 n.l.   Because the ALJ's decision predates the effective date of SSR 16-3p, this

treatment, she must "show that [s]he has exhausted all free or subsidized sources of treatment and document [her] financial circumstances before inability to pay will be considered good cause." *Gordon*, 725 F.2d at 237 (*referencing* SSR 82-59, 1982 WL 31384, at *4 (1982).)

Here, the ALJ completed the two-step *Craig* analysis. First, the ALJ stated that she had "careful[ly] consider[ed]" the evidence and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[.]" (Tr. at 20.) The ALJ therefore discharged her duty under the first step of the *Craig* analysis. Second, at step-two of the *Craig* analysis, the ALJ decided that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (*Id.*)

In support, the ALJ explained that the medical evidence, which she discussed throughout the Decision, was inconsistent with Plaintiff's claims of incapacitating limitations (Tr. 20-22). *See* 20 C.F.R. § 404.1529(c). For example, in June 2012, Plaintiff reported that her wrist pain had improved, but in August 2012, Plaintiff reported wrist pain, yet x-rays between June and August 2012 were largely the same. (Tr. 20, 218, 221, 215, 257.)

Additionally, in August 2012, Plaintiff's treatment provider suggested that physical therapy might be necessary. (*Id.* at 20, 258.) However, no records indicate that Plaintiff sought or received physical therapy for her wrist, and Plaintiff received no additional treatment for her left wrist. (*Id.* at 20-21.) Plaintiff's extremities were otherwise benign with one

---

Recommendation will apply SSR 96-7p to Plaintiff's credibility challenge.

exception which the ALJ (as discussed above) reasonably gave little weight – June 2014 – when Plaintiff gave Dr. Shugart disability forms to complete. (*Id.* at 20-22, 286-87, 293-94.) Thus, the ALJ reasonably observed that Plaintiff' allegations of disabling limitations of the left wrist were generally inconsistent with and unsupported by objective medical evidence. (*Id.* at 21.)

Nor does the Court find persuasive Plaintiff's argument that the ALJ's credibility analysis is materially flawed in light of the manner in which she handled Plaintiff's asserted lack of health insurance. Here, the ALJ specifically considered these claims and stated "I acknowledge that the claimant had financial difficulties interfering with her ability to receive consistent follow up treatment. However, if the claimant's wrist pain was of disabling severity as alleged, one would expect to see some sort of treatment during a two year period."[10] (*Id.* at

---

[10] At Plaintiff's administrative hearing, the ALJ further said:

> [T]he records reflect that she injured her left wrist. I don't have any evidence of physical therapy or any other treatment to show that her facture was so severe that she had limited functioning of the hand. Now, the record does reflect that she has had some problems with the healing of it, but then the records available to me don't give me any real appreciable insight as to functionally what her limitations were. And on top of that, I don't have any insight as to what treatment she received or needed for a whole year.
>
> So I would make the reasonable assumption she was well. Now, there is some indication that she had difficulty affording medication and treatment, but I don't have any emergency room visits. I don't have other records giving me some insight. If you want to further support her allegations during that time period, I am very open to hearing your position on that.

(Tr. 36.) Plaintiff did not further supplemented the record on this issue.

18

21.) Thus, this is not a case where the ALJ failed to consider Plaintiff's claims.[11] Rather, the ALJ properly considered Plaintiff's subjective accounts, and, based on medical evidence, Plaintiff's inconsistent self-reports, and additional evidence of record, appropriately determined that Plaintiff's claims were less than credible.

Nor is this a case where a lack of insurance resulted in no medical treatment whatsoever. Here, the ALJ considered Plaintiff's lack of health insurance, but appropriately indicated that despite this lack of insurance, Plaintiff did seek and receive medical treatment for issues unrelated to her wrist. (Tr. 20-21.) However, Plaintiff did not regularly complain about wrist pain, injury, or functional limitations, and was (with only one exception which was properly accounted for by the ALJ) never assessed related limitations. Thus, there is no merit to Plaintiff's argument that the ALJ did not properly consider her lack of health insurance.[12]

---

[11] *See, e.g.*, *Fuerst v. Colvin*, No. 1:15CV1054, 2016 WL 5957602, at *9 (M.D.N.C. Oct. 13, 2016) (unpublished) ("[T] there was no evidence before the ALJ that [claimant] sought more aggressive means of treatment such as physical therapy . . . or that she sought financial assistance in obtaining medications. Moreover, the ALJ's credibility analysis turns on more than simply a negative credibility inference based upon Plaintiffs inability to secure additional medical care or medication.").

[12] The case Plaintiff cites in support of this argument, if anything, suggests that at most any error here was harmless. (Docket Entry 11 at 14.) *See, e.g.*, *Cummings v. Colvin*, No. 1:14CV00520, 2016 WL 698081, at *7 (M.D.N.C. Feb. 19, 2016) (unpublished) ("Here, although Plaintiff testified that she did not seek treatment between May 2011 and the February 2013 hearing before the ALJ due to a lack of 'funds to go back and forth to the doctor' (Tr. 60), the ALJ did not find Plaintiff 'entirely credible' (Tr. 19), and *Plaintiff did not offer any further evidence regarding her inability to afford treatment, or what attempts, if any, she made to obtain treatment at free or low-costs clinics* (see Tr. 44-61). Under these circumstances, the ALJ did not err in discounting Plaintiff's credibility due to lack of treatment.") (emphasis added).

Next, to the extent that Plaintiff contends that the ALJ materially erred by not considering her work history, Plaintiff is incorrect. A claimant's prior work record is relevant to a credibility analysis, but is only one factor among many. *See* 20 C.F.R. § 404.1529(c)(3) (requiring ALJ to consider "information about [a claimant's] prior work record" in assessing credibility). Thus, "while a long work history may be a factor supporting credibility, it is not controlling." *Maner v. Colvin*, No. CA 1:12-2969-RBH, 2014 WL 4656383, at *5 (D.S.C. Sept. 17, 2014) (unpublished); *see also Wavercak v. Astrue*, 420 Fed. App'x 91, 94 (2nd Cir. 2011) ("That [the claimant's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the [other] substantial evidence . . . .").[13]

Here, the ALJ discussed Plaintiff's work history in detail during the administrative hearing (Tr. 29-32, 42-43), and in connection with her finding that Plaintiff could perform her past relevant work. (*Id.* at 22-23.) The ALJ also indicated that she considered the entire record in assessing Plaintiff's RFC. (*Id.* at 19.) Moreover, as discussed above, the ALJ here also considered significant additional evidence relevant to a credibility analysis. Consequently, any error here is, at most, harmless. Plaintiff has failed to demonstrate any material error in the ALJ's credibility analysis.

---

[13] *See also, e.g., Michel v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-13-2311, 2014 WL 2565900, at *3 (D. Md. June 5, 2014) (unpublished) ("It is clear that the ALJ was aware of Mr. Michel's past work as a ramp supervisor, as the ALJ inquired into Mr. Michel's work history at the hearing and specifically mentioned his past relevant work in the written opinion. The ALJ's failure to expressly discuss Mr. Michel's work history in the credibility evaluation does not merit remand.") (citations omitted).

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's Decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 10) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be **GRANTED**, and the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

January 12, 2017
Durham, North Carolina